STATE of North Dakota, Plaintiff and
Respondent,

v.

James KUNTZ, Defendant and Appellant.

No. Cr. 257.

Supreme Court of North Dakota.

Oct. 29, 1954.

Robert Vogel, State's Atty., and Paul W. Buehler, Asst. State's Atty., Garrison, for plaintiff and respondent.

J. K. Murray, Bismarck, for defendant and appellant.

MORRIS, Chief Justice.

This is a criminal action in which the state charged that the defendant, James Kuntz, on or about the twentieth day of March 1953, in McLean County, North Dakota, "did commit the crime of Unlawful Killing of Livestock, committed in the manner following, to-wit: That at the same time and place the said defendant did then and there wilfully and unlawfully and wrongfully and intentionally kill or cause to be killed one Heifer Calf, the property of Ambrose Hosie." The defendant pleaded not guilty. The jury rendered a verdict of guilty, upon which the court, on December 3, 1953, rendered judgment sentencing the defendant to be imprisoned in the state penitentiary not less than two nor more than five years.

The defendant moved for arrest of judgment and for a new trial. Both motions were denied. The defendant has appealed from both the judgment and from the order denying his motion for a new trial. Under both appeals he challenges the jurisdiction of the convicting court upon the ground that the crime was committed upon the Fort Berthold Indian Reservation against the property of an Indian who was then residing and operating a ranch on the reservation.

There is no dispute as to the time and place of the commission of the offense by the defendant, who is a white man. There is a dispute as to whether Ambrose Hosie is an Indian and as to whether he owned the animal that was killed. Before considering further these differences of fact between the state and the defendant, we will turn to the law applicable to the jurisdiction of state courts in such cases.

In Williams v. United States, 327 U.S. 711, 66 S.Ct. 778, 780, 90 L.Ed. 962, we find this statement:

"While the laws and courts of the State of Arizona may have jurisdiction over offenses committed on this reservation between persons who are not Indians, the laws and courts of the United States, rather than those of Arizona, have jurisdiction over offenses committed there, as in this case, by one who is not an Indian against one who is an Indian."

The statement of the law above quoted from Williams v. United States is applicable to the jurisdiction of state courts over offenses committed on the Fort Berthold Reservation in North Dakota by persons belonging to the classes mentioned.

■ The courts of the State of North Dakota do not have jurisdiction over crimes committed on the Fort Berthold Reservation by one who is not an Indian against one who is an Indian. Donnelly v. United States, 228 U.S. 243, 33 S.Ct. 449, 57 L.Ed. 820, Ann.Cas.1913E, 710; State v. Youpee, 103 Mont. 86, 61 P.2d 832; 42 C.J.S., Indians, § 79b.

"The exclusive jurisdiction of the Federal courts over Indian reservations within state limits extends not only to crimes committed by an Indian, but also to crimes committed on the reservation against an Indian by a white person." 27 Am.Jur., Indians, Section 51.

■ On the other hand, our state courts have jurisdiction over offenses committed on Indian reservations by persons who are not Indians against other persons who are not Indians. Draper v. United States, 164 U.S. 240, 17 S.Ct. 107, 41 L.Ed. 419; State v. Campbell, 53 Minn. 354, 55 N.W. 553, 21 L.R.A. 169; 27 Am.Jur., Indians, Section 51; 42 C.J.S., Indians, § 79c.

The state contends that Ambrose Hosie, the person against whom the crime in this case is alleged to have been committed, is not an Indian and that there being no contrary reservation of power by treaty or by federal statute with regard to the Fort Berthold Reservation, the courts of the State of North Dakota have jurisdiction to prosecute the defendant for the crime charged. This requires us to determine upon the record in this case whether Ambrose Hosie is an Indian.

Ambrose Hosie, the complaining witness, testifying on the part of the state, said that he lives on the reservation in McLean County and has lived in this country all of his life of about thirty-three years. He owns about forty head of Hereford cattle. On about the twentieth of March 1953, a yearling heifer was missing. Later he saw the head and hide of the animal where it had been butchered about two and a half miles northwest of his farm. He recognized the hide by his brand. On cross-examination this witness testified that he permitted his cattle to run loose on the reservation. When asked if he was of Indian descent, he said: "Yes, I am an Indian. Q. What part Indian—fullblood or what? A. Half." Another witness for the state testified that Hosie was part Indian.

Another witness, Ben Kills Thunder, who was chief of police at Elbowoods and also a special deputy officer on the Fort Berthold Reservation, testified that the hide was turned over to him; that it was branded 2 over 3 and that he knew that it was Ambrose Hosie's brand. The hide also was branded "ID" on the right shoulder. The witness stated: " 'ID' stands for Indian; the government Tribal Laws." After further examination of Hosie during which the question was raised as to who owned the animal, he testified that

before he could sell it he had to get permission to sell it and that the animal belonged to the Indian tribe and himself and that he is a member of the tribe. He also stated that if he got permission of the government to sell the animal, he would get the money. It is obvious that at that point in the case the state was trying to prove that Hosie was the owner while the defense was trying to establish that the government was the owner of the legal title and that Hosie was the custodian and beneficial owner.

Later the parties reversed their positions somewhat. The state now contends the United States Government is the owner of the animal that was killed and that the crime was committed against the United States Government rather than against Hosie and seeks to apply the rule that state courts have jurisdiction over larcenies of property of the United States committed within the state on the ground that the act is an offense against the state as well as against the federal government. See State v. Frach, 162 Or. 602, 94 P.2d 143. The defense contended on the hearing of the motion for arrest of judgment and now contends that the heifer that was killed was the property of Ambrose Hosie, an Indian, constitutes a crime against an Indian committed on an Indian reservation, and the state courts therefore have no jurisdiction.

In State v. Phelps, 93 Mont. 277, 19 P.2d 319, 321, it is said:

"Presumptively, a person apparently of mixed blood, residing upon a reservation and claiming to be an Indian, is in fact an Indian."

In this case it is obvious that Ambrose Hosie was half of Indian blood; that he lived on the reservation as an Indian and was treated as an Indian by the Indian Department. He was permitted to possess and raise cattle as a part of the tribal herd under the supervision of the Indian Department. The cattle were branded with Hosie's brand as well as that of the Indian Department. He was clearly the beneficial owner of the cattle and the recipient of the money from those that might be sold, regardless of where the legal title rested. The state prosecuted this case upon an information charging that the animal that was killed was the property of Ambrose Hosie and tried the case upon that theory. We think the state was successful in establishing that the animal that was killed was the property of Ambrose Hosie. The difficulty for the state arises from the fact that the record also shows that Ambrose Hosie is an Indian. Therefore the crime was committed against an Indian by killing his livestock. It is a crime committed by a white man against an Indian on an Indian reservation and under the rules stated in Williams v. United States, above, is an offense over which the courts of the United States rather than those of the State of North Dakota have jurisdiction. The District Court of McLean County being without jurisdiction to render the judgment appealed from, that judgment is reversed.

BURKE, SATHRE, JOHNSON, and GRIMSON, JJ., concur.